*Formatted for Electronic Distribution*                                                                                              *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
March 4, 2016

_____

**In re:**
    Peter N. Rubino and                                              Chapter 13 Case
    Patricia L. Rubino,                                                # 08-11041
                Debtors.
_____

**Peter N. Rubino and Patricia L. Rubino,**
                Plaintiffs,
        vs.                                                               Adversary Proceeding
**Deutsche Bank National Trust Company,**              # 14-1011
**as Indenture Trustee for American Home**
**Mortgage Investment Trust 2007-2,**
**Mortgage-Backed Notes, Series 2007-2,**
**and Ocwen Loan Servicing, LLC,**
                Defendants.
_____

| *Appearances:* | Rebecca Rice, Esq. | Andre Bouffard, Esq. |
|---|---|---|
| | Cohen & Rice | Downs, Rachlin & Martin |
| | Rutland, Vermont | Burlington, Vermont |
| | For the Plaintiffs | For the Defendants |

## MEMORANDUM OF DECISION
### ON THE CROSS MOTIONS FOR SUMMARY JUDGMENT

       The Plaintiffs, Mr. and Mrs. Rubino, own a parcel of real property composed of five lots and approximately 110 acres of land, and dispute the mortgage deed now held by the Defendants includes all of that land.  They allege the subject mortgage deed conveyed only the 11-acre lot on which their house is located because that is the only portion of property described in the mortgage deed by a specific, metes and bounds description. The Defendants, by contrast, contend the mortgage deed description is sufficient to convey the entire property because it includes a deed reference to the portions of the land not specifically described.  Alternatively, the Defendants assert even if there is a flaw in the mortgage deed description, it is not fatal to their position because the Plaintiffs have failed to prove the subject mortgage deed was intended to convey less than the entire 110-acre parcel, and principles of equity and fundamental fairness require a determination in their favor.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered in this District on June 22, 2012. The Court declares the claims presented by these cross motions for summary judgment are core matters under 28 U.S.C. §§ 157(b)(2)(B) and (K), over which this Court has constitutional authority to enter a final judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

When they purchased this property in 2004, Mr. and Mrs. Rubino (the "Plaintiffs") borrowed money from, and gave a mortgage to, CTX Mortgage Company, LLC ("CTX"). That mortgage (the "CTX Mortgage") clearly described the property it was encumbering to include, through a metes and bounds description, all 110 acres of the Plaintiffs' land consisting of five numbered lots.  When they refinanced their mortgage debt in 2006, the Plaintiffs borrowed money from, and gave a mortgage to, American Brokers Conduit ("ABC").  Significantly, the property description in the mortgage deed to ABC (the "ABC Mortgage") was a collapsed version of the property description in the CTX Mortgage; it included a reference to all five lots making up the 110-acre parcel, but included a metes and bounds description of only one 11-acre lot on which the Plaintiffs' home is located ("Lot 3").

The Plaintiffs filed for relief under Chapter 13 of the Bankruptcy Code in October 2008, and the Court entered an order confirming their Chapter 13 plan in August 2009. In February 2009, ABC assigned its mortgage to Deutsche Bank National Trust Company ("Deutsche Bank").  Thereafter, the Plaintiffs fell behind in their mortgage payments, Deutche Bank filed a motion for relief from stay, and the Chapter 13 trustee filed a motion to dismiss the case. The Court granted the relief from stay motion, and Deutsche Bank commenced a foreclosure action.  The Plaintiffs requested mediation in connection with the foreclosure action, but prior to the scheduled mediation session, Deutsche Bank's servicer offered the Plaintiffs a loan modification. The Plaintiffs accepted the modification proposal, and the Court entered an order approving the loan modification agreement on November 17, 2011. As a result of the loan modification, the Plaintiffs were able to file an amended Chapter 13 plan, bring their mortgage and plan payments current, and move forward in their bankruptcy reorganization process.  On July 18, 2013, the Court entered an order approving the Plaintiffs' amended plan (which incorporated the terms of the modified mortgage debt).  Neither the Plaintiffs nor Deutsche Bank (nor its servicer) raised any issue with respect to the mortgage property description or scope of the mortgage lien through this point in the case.

On November 6, 2014, approximately fifteen months after the Court approved the amended plan, the Plaintiffs initiated this adversary proceeding by filing a complaint entitled "Complaint to Determine Extent of Lien and/or Reform Mortgage Deed Description" (doc. # 1, the "Complaint").  In the

2

Complaint, the Plaintiffs allege the property description in the ABC Mortgage includes only Lot 3, and not the full 110-acre parcel, and seek (1) a determination the ABC Mortgage, which is currently held by the Defendants as assignee, is secured solely by Lot 3, and/or (2) a reformation of the last paragraph of the collateral description in the ABC Mortgage to refer to a 1994 deed rather than a 1997 deed. If they prevail, Deutsche Bank's collateral would be reduced from five lots to one, and from 110 acres to 11 acres.

On December 5, 2014, the Defendants filed an answer (doc. # 6, the "Answer"), asserting the documents underlying the subject loan transaction speak for themselves and raising the affirmative defenses of laches, waiver, and the statute of limitations.

The Court entered a stipulated scheduling order on January 14, 2015 (doc. # 10), and an amended scheduling order on August 4, 2015 (doc. # 18); the latter, inter alia, required the parties to file any dispositive motions by September 15, 2015. On August 7, 2015, the Defendants filed a motion to amend their Answer (doc. # 20) along with an amended answer (doc. # 20, Ex. 1, the "Amended Answer"). In their Amended Answer, the Defendants added an affirmative defense asserting three claims: (1) since the Defendant Deutsche Bank is a bona fide purchaser for value of the subject mortgage, and purchased that mortgage without knowledge of the Plaintiffs' claim of an error in the property description, it is not subject to Plaintiffs' claims; (2) since the Plaintiffs failed to raise any issue with respect to the collateral description until well after they filed for Chapter 13 relief, and many years after Deutsche Bank acquired the mortgage, the Plaintiffs are precluded from any relief at this time under the theory of laches; and (3) since the Plaintiffs' claim for reformation arises in equity, it is subject to the equitable rights of Defendant Deutsche Bank. On September 15, 2015, the Court entered an order granting the Defendants' motion to amend their Answer (doc. # 26).

On September 15, 2015, the Plaintiffs and Defendants filed cross motions for summary judgment (docs. ## 27, 28, the "Plaintiffs' MSJ" and the "Defendants' MSJ," respectively). Each of the motions was accompanied by a statement of undisputed material facts (doc. ## 27-3, 28-1, the "Plaintiffs' SUMF" and the "Defendants' SUMF," respectively) and a memorandum of law. Both parties filed a response to the other's motion for summary judgment (docs. ## 30, 31). The Defendants additionally filed a response to the Plaintiffs' SUMF (doc. # 32, the "Response to Plaintiffs' SUMF"), and subsequently filed a reply to the Plaintiffs' response (doc. # 36). The matter is fully submitted.

**ISSUES PRESENTED**

If there are no materials facts in dispute, the instant cross motions present four interlocking legal issues. First, is the property description in the ABC Mortgage clear and, if so, what land does it include? Second, have the Plaintiffs met their burden of proof for a reformation of the Defendants' mortgage deed?

3

Third, if the property description has two inconsistent components, with one being specific and the other being general, does the specific description control over the general description, and does that limit the property conveyed to just Lot 3? Fourth, if the Court determines the proper interpretation of the subject mortgage's description to include only Lot 3, are the Defendants entitled to relief under an equitable remedy such as subrogation, laches, or the rights of a holder in due course without notice, to expand the scope of lands encumbered by their mortgage?

## THE UNDISPUTED FACTS

Pursuant to this Court's Local Rules, if a party fails to file a response or objection to its opponent's statement of undisputed facts, the facts set forth in that statement are deemed admitted. Vt. LBR 7056-1(a)(3). In this proceeding, the Plaintiffs filed no response to the Defendants' SUMF. Consequently, the Court finds the Defendants' rendition of material facts to be undisputed. The Defendants filed a response to the Plaintiffs' SUMF, and the Court has considered that response in making its determination as to what facts are both material and undisputed with respect to the relief sought in the cross motions for summary judgment. After due consideration of the record in this case, the Court finds the following facts to be undisputed.

1. Plaintiffs own, in fee simple, real property consisting of approximately 110 acres with a residential building thereon, located at Saw Mill Road, Wells, Vermont (the "Property"). (Plaintiffs' SUMF, ¶ 1; Defendants' SUMF, ¶ 1; Response to Plaintiffs' SUMF, ¶ 1)

2. The Property consists of five lots: four undeveloped lots ("Lots 1, 2, 4, and 5"), totaling approximately 99 acres, and an 11-acre lot on which the Plaintiffs' home is located ("Lot 3"). (Plaintiffs' SUMF, ¶ 2; Response to Plaintiffs' SUMF, ¶ 2)

3. The Plaintiffs acquired the Property by warranty deed dated April 26, 2004, from John E. Sargent and Wendy Crossman Sargent (doc. # 27-4, the "Deed"). The Deed describes the Property by reference to two separate conveyances through which the Sargents obtained the Property from Richard J. Bovey, one in 1994 and one in 1997. The 1994 conveyance is set out in Exhibit A to the Deed ("Ex. A"), and the 1997 conveyance is set out in Exhibit B to the Deed ("Ex. B"). (Plaintiffs' SUMF, ¶¶ 3-5; Defendants' SUMF, ¶ 2; Response to Plaintiffs' SUMF, ¶¶ 3-5) [1]

4. Ex. A describes the 1994 conveyance from Bovey to the Sargents as a parcel containing 11.4 acres shown as "Lot # 3" on a 1991 survey and sets out a metes and bounds description of that parcel. (Plaintiffs' SUMF, ¶ 4; Defendants' SUMF, ¶ 2; Response to Plaintiffs' SUMF, ¶ 4)

5. Ex. B to the Deed describes the 1997 conveyance from Bovey to the Sargents as containing four parcels of approximately 100 acres in total, shown as "Lots 1, 2, 4, and 5" on a 1991 survey, and sets out a metes and bounds description of those parcels. (Plaintiffs' SUMF, ¶ 5; Defendants' SUMF, ¶ 2; Response to Plaintiffs' SUMF, ¶ 5)

---

[1] The record is clear that the Property contains approximately 110 acres, but there is a lack of consistency in the record with respect to the size of the lots. For ease of reference, and without making any specific finding on this question, the Court will refer to Lot 3 as an 11-acre lot and the balance of the Property, i.e., Lots 1, 2, 4, and 5, as containing 99 acres.

4

6. In 2004, in connection with their purchase of the Property, the Plaintiffs borrowed the sum of $280,000.00 from, and gave a mortgage to, CTX. The CTX Mortgage was dated April 28, 2004, and recorded at Book 76, Page 110 of the Town of Wells land records. The description of the mortgaged property in the CTX Mortgage is substantively identical to the description contained in the Deed. (Plaintiffs' SUMF, ¶ 6; Defendants' SUMF, ¶ 3; Response to Plaintiffs' SUMF, ¶ 5)

7. In 2006, the Plaintiffs decided to refinance the Property in order to satisfy the CTX Mortgage loan and obtain additional loan proceeds for the purchase of a small business. On December 18, 2006, the Plaintiffs borrowed the sum of $327,000.00 from ABC, securing it with the ABC Mortgage dated December 18, 2006 and recorded at Book 85, Page 2 of the Town of Wells land records. (Plaintiffs' SUMF, ¶ 7; Defendants' SUMF, ¶ 4; Response to Plaintiffs' SUMF, ¶ 7)

8. The Plaintiffs worked with a mortgage broker in connection with this transaction to refinance the CTX Mortgage and had no direct contact with ABC regarding the terms of the loan, or of the mortgage generally. In particular, the Plaintiffs never had any communication with the mortgage broker or any other party about whether the ABC Mortgage would encumber the same land then encumbered by the CTX Mortgage, i.e., all 110 acres. (Defendants' SUMF, ¶ 5)

9. The loan application the plaintiffs submitted in connection with the 2006 loan lists the 2004 purchase price of the Property of $350,000.00, seeks a loan in the amount of $327,000.00, describes the Property as being located as 123 Saw Mill Hill Road, values that property at $436,000.00, does not indicate that the Plaintiffs own any other real estate, and does not break down the 123 Saw Mill Hill Road property into separate lots. (Defendants' SUMF, ¶ 6)

10. An appraisal performed in November 2006, for the refinance, encompassed only the house and 11 acres and valued that portion of the Property at $436,000 (the "Appraisal"); the Appraisal did not include the remaining 99 acres or assign any value to them, although it included a reference to that additional land in its addendum. (Plaintiffs' SUMF, ¶ 11; Response to Plaintiffs' SUMF, ¶ 11)

11. At the closing on the 2006 refinance with ABC, the Plaintiffs looked at the closing documents before signing them but paid no real attention to the description of the property in the ABC Mortgage. (Defendants' SUMF, ¶ 7)

12. Mrs. Rubino understood the ABC Mortgage to convey only the house and 11 acres because only that portion of the Property was included in the Appraisal. Mr. Rubino did not anticipate the property being encumbered by the ABC Mortgage would be any different than the scope of land that had been subject to the CTX Mortgage. (Defendants' SUMF, ¶ 7)

13. The attachment to the ABC Mortgage describes the property it encumbers as "Lot 3 in the survey entitled 'Subdivision of Lands of Richard Bovey, Sawmill Hill Road, Wells, Vermont,' dated July, 1991," provides the survey's metes and bounds description of Lot 3, and then concludes:
    > Being all and the same lands and premises conveyed to John Sargent and Wendy Grossman Sargent by Warranty Deed of Richard J. Bovey **dated April 15, 1997** and recorded in Book 58 at Page 315-317 of the Town of Wells Land Records.

    (Plaintiffs' MSJ, Ex. D; Defendants' MSJ, Ex. H) (emphasis added)

5

14. The $327,000.00 loan from ABC was disbursed as follows: $274,806.35 to satisfy the CTX Mortgage note, $10,686.31 to pay the Plaintiffs' closing costs, and $8,809.00 to pay Toyota Motor. The remaining amount of $32,698.34 was disbursed to the Plaintiffs. (Defendants' SUMF, ¶ 8)

15. The Town of Wells assesses property taxes against the 99 acres of undeveloped land and the 11acres on which the home is located as a single tax parcel, with a tax ID number of 000163-2. The ABC Mortgage requires the Plaintiffs to escrow with the lender all property taxes assessed against the Property, i.e., all tax assessed against both the 99 acres of undeveloped land and the 11 acres of land on which the home is located. The ABC Mortgage describes the property subject to the mortgage as 123 Saw Mill Hill Road, Wells, Vermont, with a "Parcel ID Number" of 001632. (Defendants' SUMF, ¶¶ 9, 10)

16. The ABC note was endorsed in blank and assigned to Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2007-2, Mortgage-Backed Notes, Series 2007-2 ("Deutsche Bank") by assignment dated February 17, 2009, and recorded at Book 90, Page 12 of the Town of Wells land records (the "Defendants' Mortgage"). (Plaintiffs' SUMF, ¶ 8; Defendants' SUMF, ¶ 11; Response to Plaintiffs' SUMF, ¶ 8) [2]

17. The Defendants' Mortgage's legal description of the encumbered property is identical to the description in the ABC Mortgage. (Plaintiffs' MSJ, Ex. E)

18. In 2012, Plaintiffs' son offered to purchase the 99 acres of land identified as Lots 1, 2, 4, and 5. That transaction was not consummated. (Plaintiffs' SUMF, ¶¶ 13, 14; Response to Plaintiffs' SUMF, ¶¶ 13, 14)

## DISCUSSION

### A. THE SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing there is no genuine issue of material fact. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. See

---

[2] The Court refers to the assigned mortgage herein as the "Defendants' Mortgage" whenever discussing that lien during a period of time after the assignment, though it is in effect the same mortgage as the ABCMortgage which it took as assignee.

Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir. 2006).

Additionally, entry of summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### B.  THE MOTIONS FOR SUMMARY JUDGMENT

#### 1.  THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants' MSJ seeks judgment only on the reformation cause of action in the Complaint. The crucial inquiry for determining if reformation is an appropriate remedy is the true intentions of the parties. Kilcullen v. Dery, 334 A.2d 410, 412 (Vt. 1975). Under Vermont law, it is well established that in order to prevail on a reformation cause of action, the "plaintiff has the burden of establishing that there existed, previously to the deed, a valid agreement representing a standard to which the erroneous writing may be reformed, so as to express the true transaction between the parties…[and to] fulfill this burden the plaintiff is required to produce proof sufficient to establish his claim beyond a reasonable doubt." Kilcullen, 334 A.2d at 411-12 (emphasis added); see also Ladouceur v. Key Bank, N.A., No. 98-11427, 1999 WL 286436, at *3 (Bankr. D. Vt. Apr. 22, 1999) (reformation is appropriate when the legal description of property contains a mistake which results in a deed that fails to express the real agreement or transaction the parties intended).

The facts in the Kilcullen case are quite similar to those at bar.  Mr. Kilcullen had purchased property from Mr. Dery, pursuant to an agreement of sale, which described the land as containing between two hundred fifty and two hundred eighty acres of land.  However, the property description in the deed (i) described the lands to be conveyed as part of 300 acres previously conveyed to the seller, (ii) then specified three lots in a metes and bounds description totaling 200 acres, and (iii) concluded with a sentence stating that the three parcels constituted the 300 acres Mr. Dery owned minus approximately 25 acres.  Kilcullen, 334 A.2d at 411. A dispute arose as to the scope of the conveyance.  The lower court ruled in favor of Mr. Dery, determining that because a specific description controls over a general one, the parties intended to convey only 200 acres as described in the specific metes and bounds description, instead of the 275 acres as described generally in the last sentence.  Id. On appeal, the Vermont Supreme Court reversed and remanded the case, finding the trial court relied solely on the deed in determining the intentions of the parties and failed to make an affirmative finding as to whether the evidence Mr. Kilcullen presented at trial sufficed to prove beyond a reasonable doubt that the parties intended to convey two

7

hundred fifty to two hundred eighty acres of land. Id. Additionally, for each of the two possible outcomes upon remand, the Supreme Court articulated the applicable law and instructed the trial court as follows:

> If the trial court finds that Kilcullen has satisfied his burden of proof, it must accordingly reform the deed. However, if the lower court, on remand, finds that based on all the evidence Kilcullen failed to show beyond a reasonable doubt that there was a prior, definite agreement to convey the three hundred acre Chittenden Trust farm, minus three twenty-five acre fields, then the court is left solely with the deed itself as the controlling expression of the intent of the parties. It is at this particular point that the deed construction principles apply. Parrow v. Proulx, A.2d 835 (Vt. 1940). The lower court must then balance such maxims as the specific controls the general, Spooner v. Menard, 196 A.2d 510 (Vt. 1963), with the rule that the instrument must be construed most favorably to the grantee, since the words of the deed might bear either party's position equally well. Bove's Exr. v. Bove, 70 A.2d 562 (Vt. 1949). By application of these and other construction guidelines, the court can properly delineate the amount of land which is conveyed by the language of the deed.

Kilcullen, 334 A.2d at 412. Thus, if the Plaintiffs cannot establish beyond a reasonable doubt that the terms of the mortgage deed description do not comport with the intentions of the parties, reformation must be denied. See Brown v. Cassella, 370 A.2d 188 (Vt. 1977).

In the instant case, the only relevant, undisputed facts in the record relating to whether there was an agreement expressing the parties' intentions regarding the scope of land to be encumbered by the ABC Mortgage are (with emphasis added):

8. The Plaintiffs worked with a mortgage broker in connection with this transaction to refinance the CTX Mortgage and had no direct contact with ABC regarding the terms of the loan or mortgage generally. In particular, the Plaintiffs never had any communication with the mortgage broker or any other party about whether the ABC Mortgage would encumber the same land then encumbered by the CTX Mortgage, i.e., all 110 acres. (Defendants' SUMF, ¶ 5)

12. Mrs. Rubino understood the ABC Mortgage to convey only the house and 11 acres because only that portion of the Property was included in the Appraisal. Mr. Rubino did not anticipate the property being encumbered by the ABC Mortgage would be any different than the scope of land that had been subject to the CTX Mortgage. (Defendants' SUMF, ¶ 7)

Beyond these facts, there is not much evidence to consider. The only evidence the Plaintiffs have offered on the salient issue of intent is Mrs. Rubino's September 15, 2015 affidavit which states, in relevant part, "When we signed the document for the refinance, I believed that the mortgage was covering the house and the lot that the house is located on, 'Lot 3'" (doc. # 27-10, ¶ 7). However, the record also contains conflicting testimony from Mrs. Rubino which she gave at a deposition that took place about 3 weeks earlier, on August 25, 2015:

Q: So if you were seeking to borrow as much as you could, which you've said, wouldn't it make sense that you would be offering the lender collateral including both the house and all of the acreage?

A: I don't know how to answer that really. It's – I mean I don't even know if it ever came up in conversation, to tell you the truth, as far as I just don't know. I mean it was a long time ago. I really don't – I don't know. It's one of these situations where it – I mean it was a mortgage broker, they did all the work, sent the people to the house, sign the paper, that was it. I mean pretty much that's what I remember. They gave us what they could give us and that was it. The house and the ten acres were valued way over the amount that they were going to give us. <u>So that's what I just assumed.</u> I don't know. I'm just – you know, I mean when I got the appraisal I said, "Oh, it's the house and ten acres, and that's what it's worth." And that's all I know.

Q: So I think what I'm hearing is that you never communicated with anyone as part of this transaction about whether or not the mortgage would have covered just the house and ten acres or all of the real estate; is that right?

A: Well, after we received the appraisal I assumed that it was going to be the house and ten acres that we were refinancing.

Q: I understand that that's what you assumed. But my question is you never communicated with anyone about that subject?

A: <u>No, never.</u> Never had a reason, no.

Q: And your assumption that you've testified about was based solely on what you saw in the appraisal report?

A: Yes.

…

Q: So when you saw this parcel ID number on the mortgage, the 001632 parcel ID number on the mortgage, did you understand that to refer to all of the property?

A: I didn't understand it to refer to anything because I didn't really even – probably didn't even care at the time about the parcel number.

Q: Now, when you looked over this mortgage and you signed it, did you take time to look it over to determine whether it covered the house and ten acres or the house and all the acreage?

A: No, I didn't, not at the time. We really didn't – you know, I didn't really – <u>wasn't really concerned about the mortgage</u> as long as we had the money that we could open our business. That's what we were concentrating on at the time.

Q: So, you weren't concerned about whether or not this mortgage covered just the house and ten acres or the house and all the acreage? Is that what you're saying?

9

    A:    <u>At the time, we didn't</u>.  Like I said, we saw the appraisal.  We saw the appraisal was for the house and ten acres.  And that's what – and there was plenty of equity there for a loan, and that's what we thought was happening.  And we never even thought about it again until we had problems.  You know, we never really even thought about it again.

(Defendants' MSJ, Ex. C, pp. 36-44) (emphasis added).  Since Mrs. Rubino's affidavit conflicts with her deposition testimony, the Court disregards her affidavit and cannot rely on it to rule on the motion for summary judgment.  <u>Mack v. United States</u>, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment").

    As to ABC's intent, the Plaintiffs have introduced no evidence that the lender intended to limit the scope of its mortgage to Lot 3.  The Plaintiffs have likewise failed to introduce any evidence of the Defendants' understanding of the scope of the ABC Mortgage which they took by assignment. The memorandum of law in support of the Plaintiffs' MSJ states, "The commitment letter issued by the lender does not specify the property securing the loan other than '123 Sawmill Hill Road, Well, Vermont," (doc. # 27-2, p. 4). However, no commitment letter is in the record. The Plaintiffs also refer to a title insurance policy that purportedly describes the property encumbered by the Defendants' Mortgage, but the Plaintiffs state they have been unable to locate it (Complaint, ¶ 23; doc. #27-2, p. 4); it is not in the record.

    Since the Plaintiffs have the burden of proving beyond a reasonable doubt that the parties to the subject mortgage intended to limit it to Lot 3, and they failed to make a showing sufficient to establish the intent of the Plaintiffs, ABC, or Deutsche Bank, summary judgment against the Plaintiffs on the reformation cause of action is warranted. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 322.

2. T<small>HE</small> P<small>LAINTIFFS'</small> M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small>

    The Plaintiffs' MSJ seeks a determination on the scope and extent of the property securing the ABC Mortgage which was subsequently assigned to the Defendants. The Plaintiffs argue the Defendants' mortgage lien encumbers only Lot 3, notwithstanding the last sentence in the property description referring to Lots 1, 2, 4, and 5, because (1) the intentions of the parties control when construing what property is conveyed by a deed, (2) unclear language should be construed against the drafter, and (3) the specific description controls when there is a conflict between a general and specific description of property (doc. # 27-2, pp. 5-7).

    The Plaintiffs' first argument is unavailing because, as found above, the Plaintiffs failed to prove beyond a reasonable doubt that the parties intended the ABC Mortgage to encompass only Lot 3, and failed to establish what lands the parties intended to include in the ABC Mortgage.

10

The Court turns next to how the language of the ABC Mortgage should be construed. It is clear the drafter of the ABC Mortgage made a mistake. The last sentence of the description, which begins with "Being the same property conveyed … [citation to deed reference]" should refer to the deed conveying the property described in the immediately preceding metes and bounds description. It should verify the property described above is a parcel of land previously deeded to the grantor. However, in this case, there is an inconsistency between those two elements of the deed. The deed reference at the conclusion of the property description refers to the 1997 deed conveying Lots 1, 2, 4, and 5, while the metes and bounds description pertains only to Lot 3.[3] This creates an ambiguity in the property description. Both parties have proffered reasonable, yet different, interpretations of the description. A deed term is properly categorized as ambiguous when reasonable people could differ as to its interpretation. Brault v. Welch, 97 A.3d 914, 918 (Vt. 2014) (citing DeGraff v. Burnett, 939 A.2d 472, 478 (Vt. 2007).

To resolve the ambiguity in this case, the Court applies the longstanding rules of deed description construction. When a deed contains a specific metes and bounds description and also a reference to a deed, the deed reference is regarded as a general description. Basso v. Veysey, 110 A.2d 706, 708-09 (Vt. 1954). When the specific description and general description do not coincide, the specific description controls. Basso, 110 A.2d at 708 (citing Parrow v. Proulx, 15 A.2d 835, 836 (Vt. 1940) (holding that when the particular and general description do not coincide, the particular metes and bounds description prevails and settles the boundaries over any general descriptions in the deed)). Since the ambiguity here arises because the reference to a deed conveying Lots 1, 2, 4, and 5 does not coincide with the specific metes and bounds description of Lot 3, the specific description must control and the subsequent "Being all and the same lands …" reference to the 1997 deed conveying Lots 1, 2, 4, and 5 must be rejected as included in error.[4] The Plaintiffs' third argument that the ABC Mortgage should be interpreted to encompass only Lot 3 based upon application of the rules of construction has merit.

### 3. THE DEFENDANTS' DEFENSES AND REQUESTS FOR EQUITABLE RELIEF

Although the Court finds the scope and extent of the ABC Mortgage is limited to Lot 3 based on the above analysis, as a court of equity, it must also take into account equitable remedies and consider the

---

[3] There are at least a couple of possible explanations for this error. It is possible the drafter of the mortgage deed description intended to include 4 components: (i) the metes and bounds description of Lot 3; (ii) a reference to the deed conveying Lot 3; (iii) a metes and bounds description of Lots 1, 2, 4, and 5; and (iv) a reference to the deed conveying lots 1, 2, 4, and 5; and inadvertently omitted a portion which included the deed reference for the Lot 3 conveyance and the metes and bounds description of Lots 1, 2, 4, and 5 (components (ii) and (iii) above). Alternatively, it is possible the drafter intended to include only Lot 3 and simply included the wrong deed reference at the conclusion of the description. The former possibility would support the Defendants' position and the latter would support the Plaintiffs' position. Unfortunately, the record provides no explanation.

[4] That deed reference should have been to the deed which conveyed Lot 3 to the Sargents on July 8, 1994, recorded at Book 54, Pages 475-77 of the Town of Wells land records.

11

entire record before it before rendering a final decision. "[I]n the exercise of its equitable jurisdiction the bankruptcy court has the power to sift [through] the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." Pepper v. Litton, 308 U.S. 295, 307–08 (1939). The Defendants raise three equitable defenses to defeat the Plaintiffs' claim that the Defendants' mortgage should be construed to encumber just Lot 3: (1) their standing as a bona fide purchaser without notice, (2) laches, and (3) equitable subrogation/unjust enrichment.

*(a) Defendants as Bona Fide Purchaser*

The Defendants assert that (i) if the Plaintiffs were able to establish there had been a binding agreement as to the property being conveyed at the time they gave ABC a mortgage deed, and (ii) the instant dispute arises from a mutual mistake in ABC's drafting of the mortgage deed, then (iii) the Defendants' status as a bona fide purchaser of the mortgage rights from ABC for value, without knowledge of any defects – or claimed defects – in the mortgage instrument, would insulate them from the Plaintiffs' allegations and require judgment in the Defendants' favor. See, e.g., Cassani v. Northfield Sav. Bank, 898 A.2d 325 (Vt. 2005)(citing Restatement (Second) of Contracts § 155). However, since the Plaintiffs did not establish there was any agreement between the parties as to the scope of property being conveyed in the ABC Mortgage, this argument is inapposite and need not be addressed.

*(b) Laches*

The Defendants also insist the Plaintiffs are precluded from relief at this time under the equitable defense of laches since the Plaintiffs did not interpose any claim based upon an error or ambiguity in the ABC Mortgage property description until approximately eight years after they executed the allegedly flawed mortgage deed. The Court finds this argument unpersuasive.

To prevail on this affirmative defense, the Defendants must show both that the Plaintiffs failed to assert their right to challenge the scope of the mortgage deed for an unreasonable and unexplained period of time, and the delay was unexcused and prejudicial to the Defendants. See In re Vermont Elec. Coop., 687 A.2d 883, 884-85 (Vt. 1994). The question of whether the Defendants have met this burden is within the sound discretion of this Court. Chittenden v. Waterbury Ctr. Cmty. Church, Inc., 726 A. 2d 20, 31 (Vt. 1998).

First, the Court finds the Defendants have not shown how long the Plaintiffs were aware of the ambiguity in the mortgage deed description – and thus cannot show the Plaintiffs were aware of it for an unreasonable period of time before raising it. Second, the Defendants have not shown any prejudice they suffered due to the Plaintiffs' delay in raising the question. To the contrary, it appears from the record as if both parties treated the mortgage deed as including all five lots through the date this adversary proceeding

was commenced (doc. # 112, p. 2). As the Plaintiffs persuasively argue, and the Defendants do not dispute, the Plaintiffs have consistently made payments to Defendants since the parties entered into a loan modification in 2011, and the Defendants did not change their position (doc. # 30, p. 3). In sum, the record does not support a finding that the Defendants were prejudiced by the Plaintiffs' delay in bringing this action. Moreover, the Plaintiffs attempted to resolve the issues regarding the mortgage description in 2012 (doc. # 30, p 3). Based upon the record and the parties' arguments, the Court rejects the Defendants' affirmative defense of laches.

*(c)Equitable Subrogation and Unjust Enrichment*

The Defendants emphatically assert they are entitled to have their rights recognized and protected under the equitable principles of subrogation and unjust enrichment. The Court will address first whether the undisputed facts are adequate to invoke equitable subrogation rights.

It is undisputed the CTX Mortgage was secured by all five lots, the ABC Mortgage was granted to refinance the CTX debt, and the Defendants took the ABC Mortgage by assignment. Based upon these undisputed facts, the Defendants contend even if the mortgage description in the ABC Mortgage was flawed, the Defendants can enforce their mortgage against the same property CTX released upon payment from ABC, pursuant to the equitable remedies of subrogation and unjust enrichment. The Defendants assert justice mandates that the Court grant it this equitable remedy because otherwise the Plaintiffs would have approximately 100 acres of unencumbered land that had been encumbered by the CTX Mortgage, and the extent of the Defendants' collateral would, correspondingly, be reduced by approximately 100 acres of land -- collateral they understood they would acquire when they took the ABC Mortgage by assignment.

This Court has recently addressed the requirements and applicability of equitable subrogation and held a party must satisfy four criteria to demonstrate a right to the benefits of equitable subrogation under Vermont law: (1) the subrogee cannot have acted as a volunteer, (2) the subrogee must have paid a debt upon which it was not primarily liable, (3) the subrogee must have paid the entire debt, and (4) the subrogation must not work any injustice to the rights of others. In re Jones, 534 B.R. 588, 596-597 (Bankr. D. Vt. 2015).

The undisputed material facts pertinent to this inquiry are:

6. In 2004, in connection with their purchase of the Property, the Plaintiffs borrowed the sum of $280,000.00 from, and gave a mortgage to, CTX. The CTX Mortgage was dated April 28, 2004, and recorded at Book 76, Page 110 of the Town of Wells land records. The description of the mortgaged property in the CTX Mortgage is substantively identical to the description contained in the Deed. (Plaintiffs' SUMF, ¶ 6; Defendants' SUMF, ¶ 3; Response to Plaintiffs' SUMF, ¶ 5)

7. In 2006, the Plaintiffs decided to refinance the Property in order to satisfy the CTX Mortgage loan and obtain additional loan proceeds for the purchase of a small business. On December 18, 2006, the Plaintiffs borrowed the sum of $327,000.00 from ABC, securing it with the ABC Mortgage dated December 18, 2006 and recorded at Book 85, Page 2 of the Town of Wells land records. (Plaintiffs' SUMF, ¶ 7; Defendants' SUMF, ¶ 4; Response to Plaintiffs' SUMF, ¶ 7)

14. The $327,000 loan from ABC was disbursed as follows: $274,806.35 to satisfy the CTX Mortgage note, $10,686.31 to pay the Plaintiffs' closing costs, and $8,809.00 to pay Toyota Motor. The remaining amount of $32,698.34 was disbursed to the Plaintiffs. (Defendants' SUMF, ¶ 8)

Under these facts, it is clear (1) the Defendants' Mortgage arises from ABC's payment of the CTX Mortgage debt, i.e., a debt upon which ABC was not primarily liable; (2) ABC, as the Defendant's assignor and subrogee, paid the entire debt then outstanding to CTX; and (3) ABC is not a volunteer because a lender who refinances a loan is not a volunteer under Vermont law, GMAC Mortg., LLC v. Orcutt, 506 B.R. 52, 70-71 (Bankr. D. Vt. 2014). Thus, the first three criteria of the equitable subrogation test are met. The only criterion which remains to be examined in determining whether the Defendants may be equitably subrogated to CTX's collateral is whether granting the Defendants a lien on all five lots would work an injustice to the rights of others. The Defendants deny that it would and elaborate on that point as follows:

> Plaintiffs have other unsecured creditors that they wish to pay by removing [the Defendants'] mortgage from [Lots 1,2, 4, and 5], but those creditors have no right to be paid under chapter 13 from proceeds of property that was mortgaged in full in 2004 [by the CTX Mortgage], and re-financed in 2006 [by ABC] with even more debt. The Plaintiffs' other unsecured creditors cannot benefit in any way from the relief requested in this action without unjustly enriching the Plaintiffs.

(doc. # 28, p. 17). Unfortunately, this does not squarely establish the actual impact the subrogation would have on the rights of others, and the record before the Court is insufficient for a determination on this point. Neither party has provided case law addressing the question of whether the Court must look to the unsecured creditors' rights as they existed on the date of the subject refinance (in which case they would not be diminished by subrogation) or as they appear at this time (in which case they might be paid more through the Plaintiffs' plan if subrogation were denied). Therefore, the Court considers this factor to be neutral.

The Plaintiffs argue equitable subrogation is not applicable here because (i) the validity of the Defendants' Mortgage is not being challenged, (ii) there is no inequity in limiting the scope of the property included in the Defendants' Mortgage to that which was appraised in connection with the ABC Mortgage, and (iii) there is no unjust enrichment because the Plaintiffs are paying the full obligation and are not attempting to reduce the amount of debt secured by the Deed (doc. # 30, pp. 3-4). These

14

arguments are unpersuasive. First, the Plaintiffs offer no case law or statutory support for their assertion that equitable subrogation is limited to challenges to the validity of a mortgage and thus inapplicable to determinations of the scope of a mortgage. See U.S. v. Baran, 996 F.2d 25, 29 (2d Cir. 1993) (equitable subrogation would affect the extent of mortgagee's lien). Moreover, as the Defendants assert (doc. # 36, p. 6) to the contrary, it is not unreasonable to interpret the Complaint as a challenge to the validity of the Defendants' Mortgage as to Lots 1, 2, 4, and 5. As to the Plaintiffs' second argument, the undisputed facts fail to demonstrate any nexus between the amount of property appraised and the scope of the property the parties intended to include in the ABC Mortgage. With respect to their third argument, the Plaintiffs have not articulated facts or law to demonstrate how their continued and consistent payments to the Defendant bear on the Defendants' right to equitable subrogation.

Since the first three factors weigh in favor of granting subrogation, the remaining factor is neutral, and the Plaintiffs have failed to present any other pertinent equitable considerations, the Court finds the equities weigh in favor of the Defendants in this analysis. The Defendants may be subrogated to the rights of CTX, against the full parcel of the Property. However, this subrogation is limited to the portion of the Defendants' debt that can be traced to the loan made to satisfy the CTX Mortgage. See Jones, 534 B.R. 588 at 599. This results in the Defendants' having a mortgage lien on all five lots, to the extent of the CTX debt ABC paid in 2006.[5]

The Court turns next to the availability of an equitable lien to expand the scope of the Defendants' Mortgage beyond just Lot 3 for the remaining portion of the Defendants' debt, i.e., that portion of the debt not allocable to the refinance and thus not eligible for equitable subrogation. This presents a reprise of the legal arguments before the Court in Jones.[6] There, the Court identified the three primary considerations in the determination of whether a party is entitled to an equitable lien based upon the theory of unjust enrichment. Id. at 603. Transferring those considerations here requires the Court to examine (1) how significantly the Plaintiffs benefitted from the funds advanced by ABC in excess of those necessary to

---

[5] The total sum the Plaintiffs borrowed from ABC is $327,000. The Plaintiffs used $41,507.34 for purposes unrelated to the refinance of the CTX Mortgage ($8,809.00 was paid to Toyota Motor and $32,698.34 was retained in cash). From the remaining amount of $285,492.66, $278.806.35 was used to satisfy the CTX Mortgage note and $10,686.31 was used to pay the closing costs. Allocating the closing costs pro rata between the refinance and non-refinance components of the loan, 13.1% of the closing costs ($1,399.91) is allocated to the non-refinance portion and 86.9% of the closing costs ($9,286.40) is allocated to the refinance. Thus, the total portion of the loan allocable to the non-refinance elements is $42,907.25, which is 13.1% of the entire $327,000 loan; and the refinance element totaled $284,092.75, or 87% of the entire loan. Applying these percentages to the modified mortgage loan agreement (doc. # 92), the portion of balance due Defendants allocable to the refinance is $350,886.46 (86.9% of $403,781.89). And the portion of the sum in the modified loan agreement allocable to the loan for the Plaintiffs' other, non-refinance purposes would be $52,895.43 (13.1% of $403,781.89).

[6] While the basis for the request and theory for this relief resemble the mortgage interpretation issues raised in the Jones case, supra, the instant case differs critically from Jones, in that here it is a question of the scope of the mortgage whereas in Jones, the focus there was on the validity of a mortgage.

satisfy or refinance the CTX Mortgage; (2) how easy it would have been for the Defendants to have discovered the error in the property description before taking the ABC Mortgage by assignment (and either getting it corrected or declining the assignment); and (3) whether the granting of an equitable lien to the Defendants on the entire parcel would undermine the statutes or case law governing the construction of ambiguous instruments.

In light of the undisputed material facts before the Court, it finds, first, that the Plaintiffs benefitted significantly from the funds ABC advanced beyond that required to satisfy the CTX Mortgage. The record indicates the primary reason the Plaintiffs sought to refinance the CTX debt was to obtain maximum cash possible to purchase and open a business (Plaintiffs' SUMF, ¶ 7; Defendants' SUMF, ¶ 4; Response to Plaintiffs' SUMF, ¶ 7). This consideration weighs in favor of granting the Defendants an equitable lien to offset the unjust enrichment Plaintiffs would otherwise reap.

As to the second consideration, it is clear the description of the property in the Defendants' Mortgage was conspicuous and ambiguous from the outset. The Defendants have significant expertise with respect to loans and mortgages, and with minimal due diligence, could have detected the error and easily addressed it before taking the ABC Mortgage by assignment. Therefore, this consideration weighs against allowing the Defendants the remedy of an equitable lien.

Third, with regard to whether granting an equitable lien to the Defendants on the entire parcel would undermine the statutes or case law governing the construction of ambiguous instruments, the Court finds equity weighs in favor of the Plaintiffs. The case law regarding interpretation of ambiguous deeds categorically favors the Plaintiff on this point and is designed to encourage drafters of deeds to exercise great care in making them as clear and consistent as possible.

The Court considers the burden of proof as a factor here, as well as the general equities reflected in the record. The burden of proof is on the Defendants to establish their right to equitable relief in general and for an equitable lien in particular. Tennessee Commerce Bank v. Hutchins, 409 B.R. 680, 684 (Bankr. D. Vt. 2009). Additionally, the undisputed material facts state Lot 3 was appraised in 2006 for $436,000 (Plaintiffs' SUMF, ¶ 11; Response to Plaintiffs' SUMF, ¶ 11), and the Defendants have offered no proof disputing the valuation of Lot 3 or contesting the Plaintiffs' allegation that the Defendants are fully secured by their lien on Lot 3 for the balance due (approximately $403,781.89).

Weighing these factors together, and taking into account whether an equitable lien is necessary to prevent unjust enrichment, the Court finds the Defendants have failed to meet their burden of proof. Therefore, the request for an equitable lien on the entire parcel is denied and the sum of approximately $52,895.43 is secured only by a lien on Lot 3. This outcome comports with the Court's interpretation of

the ambiguous mortgage property description and lack of justification for any enhancement of the Defendants' rights for this portion of the debt under equity, beyond that of equitable subrogation.

## CONCLUSION

For the reasons set forth above, the Court concludes the Plaintiffs have failed to meet their burden of proof, there are no material facts in dispute, and the Defendants are entitled to judgment as a matter of law on the reformation cause of action. Thus, the Court denies the Plaintiffs' motion for summary judgment.

On the cause of action seeking a declaration as to the scope of property included in the Defendants' Mortgage and the Defendants' MSJ, the Court finds there are no material facts in dispute. The Court concludes the property description in the Defendants' Mortgage is ambiguous and is properly construed as containing only Lot 3. The Court further concludes it is proper to grant the Defendants equitable relief to (1) subrogate the Defendants to the rights of the party whose claim was paid by ABC, the assignor of the Defendants' Mortgage, resulting in approximately $350,886.46 of the Plaintiff's debt to the Defendants being secured by all five lots; and (2) the balance of the Plaintiff's debt owed to the Defendants, in the amount of approximately $52,895.43 secured by a mortgage on Lot 3 alone. The Court denies relief on all other affirmative defenses and requests for equitable relief interposed by the Defendants.

This constitutes the Court's findings of fact and conclusions of law.

_____

March 4, 2016  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge